Thank you. Good morning. Counsel, how much time would you like to reserve for a reply? Five minutes, please. All right. Thank you. Thank you. May I proceed? You may. Thank you. May it please the Court, my name is Stephanie Fennelly, and I represent the appellant, Jerry Enrique Watkins. The main argument on this appeal is that the bankruptcy court erred in dismissing Mr. Watkins' bankruptcy before giving him any opportunity to even be heard on the objections he had raised to U.S. Banks' claim and before he even had an opportunity to obtain discovery from U.S. Bank. That all sounds very good, but that's not quite the record, is it? Because it seems like Judge Clement was, from the very beginning, the initial status conference was clear that this case was a little different than most given the history and was very clear that if things didn't break in a timely manner, that the court was inclined to dismiss and dismiss with prejudice. And then the claim comes up. There's a running discussion. The claim objection is running sort of parallel with the confirmation, and the judge says the paths are going to cross in the December hearing, and you have to show me enough to continue, and the court found that the client didn't. That's a lot to address. Let me parse that, and I will address it. First of all, I didn't see anywhere in the record that the court used the term with prejudice prior to actually dismissing the bankruptcy. If he didn't say that, he said he'd dismiss it with a bar. With a bar. Isn't that effectively with prejudice? The concern that I have, and I raised this in the brief, and I'm happy. If the court does not assume that with prejudice means Mr. Watkins can never file based on that particular debt or whatever debts he had at the time of his 2022 filing, I'm happy with that, and I can move on from the with prejudice. My concern was that, Your Honor. I don't think he clarified it in the second line of the decision where he says it's with prejudice with a three-year bar. That's what he meant by with prejudice. Wonderful. That's what I think we need. To that point, it seems like one of those provisions in the order has to be reconciled, either with prejudice or three years. I take it that's your concern. That is my concern, and I certainly didn't want that to be raised. I mean, since I was appealing, I thought this is an important item to address. I'll move on from that since I'm on a clock. To address the issue of the court had said in the beginning, you know, this is my client. My client had six prior bankruptcies. I mean, that is the truth. Now, if you look at those bankruptcies, one of them had proceeded for three and a half. He had two that had claims that had been or plans that had been confirmed. From 2009 to 2012, he was in a he was in his plan, and he was making payments, and, in fact, in that early one, he made $110,000 of payments during that time. He wasn't able to discharge it. He wasn't able to keep that going, and he fell out of bankruptcy. Another one that he filed, the most previous one, in 2019, he was in for three years, and he was making payments, including $37,000 and change to U.S. Bank. So I appreciate that the court did initially say, look, we're going to make sure that you can get a plan confirmed. Three months after he filed, he did a motion to confirm the plan. Let's look at it from a different perspective, though, because the other six bankruptcies, as Judge Clement indicated, spanning 13 years, I believe. And over that 13 years, how much did the secured creditor receive in total? Well, that's debatable. It's difficult, but after 13 years, somebody should know. And one would assume that U.S. Bank would know. Or the debtor would have bank records. It's his money, yes, and his bank account is coming from, unless it's coming from Guatemala. He wrote checks. So let me address that. The record shows that he made $30,000 and change in his first bankruptcy and $37,000 and change in his second. Those were payments that he had made. The concern is this. 2009 to 2012, that's years ago. This was almost 8% interest compounding. We have compound interest. We have late fees. But you can calculate the compound interest. I mean, I understand that. If that's your point, if you believe that the 30 and the 37 grew to be such a significant amount that it was going to take it from the 2.7 to the 1.4, that's a mathematical exercise, isn't it? It may be. My concern is this. The U.S. Bank hadn't shown where they'd applied those payments. And if they put them in a suspense account, which very often they do, they never get applied to principal. They never get applied to anything. And my client just wanted to be able to get the records and show. There was another concern that I need to raise, which is when he filed in 2022, he had done a request for a payoff. And U.S. Bank said it's just over $1.2 million. Great, he says. Did that make sense to the client? Did the debtor offer any reason why an obligation in more than $2 million went down to $1.2? But it hadn't been $2 million, Your Honor, because in 2019 they had made a claim for just over a million. Now, I understand that was pursuant, one of the arguments is that was pursuant to some cram down. But the point is that was what they were seeking back then. The counsel. Yes. The record reflects that they filed the proof of claim two weeks before he filed his plan, seven months before the case was dismissed. In all that time, he never established anything other than $30,000 was in dispute. And at the confirmation hearing, he agreed he couldn't confirm the plan as written. He hadn't filed an amended plan. The case deserved dismissal at that point. His only concern was a one-year bar rather than a three-year bar. So what we're really talking about is did the court abuse his discretion in granting a three-year bar rather than a one-year bar, aren't we? I will certainly address that, Your Honor. Thank you. I do want to point out that when, and I have my notes here, on July 12th, my client filed his motion to confirm the plan. And that was when he had been told in May that it was a $1.2 million. These are from U.S. Bank. Did it make sense to him? I don't know. But if I get a bill for $1.2 million, I'm certainly not going to say, oh, I bet I owe a lot more than that. Really? Really? I mean, you do that, but you realize you're getting a gift. That's the problem. Well, and he may have thought that. You're going to get an objection. You're not going to be able to confirm a plan if they don't agree that that amount is right. And he knew that by trying to move the case forward because he had a number he could live with, that he was going to face a problem before confirmation. I think we would be speculating as to what is in his head. And remember, he was represented by counsel the entire time. So I do want to note that. In any event, in July, he files a timely motion to confirm. August 1st, two and a half weeks later, U.S. Bank says, we made a mistake. Here is the actual sum, which was huge, obviously. It was $2.4 million. Now, that's a lot of money. And where did it come from? The thing is, U.S. Bank never explained exactly where that came from. But I will move on to the ban because I understand that. Well, the other thing, too, that hangs over this is the potential other assets that have been disclosed. Where's the $2.5 million in the Cayman Islands? If he wanted to fund a plan and he had the ability to fund it, why didn't he utilize any of those funds? I don't see in the record that he actually had those funds. That was part of the problem is that the record was never really clarified, despite the multitude of cases that have been filed. My understanding from the record is that that was not his money. It was corporate money. He had an interest in this money. If he could have paid it off, then the bankruptcy should have been dismissed because he would have said, well, why are you in bankruptcy? You don't even have – I think that was the problem is that the trust – the court certainly was not comfortable that it had been established in that regard, suggesting that the documentation and the proof was never satisfactorily explained. I believe that was part of the objection early on is that we still don't know what's out there to any certainty. I think that was the trustee's objection, and the trustee's not here. I would note that. The trustee did not file an appellee's brief for whatever reason. So that argument – I mean, the practicalities of the situation suggests that the trustee is not going to get paid for it, not going to. So, I mean, I get your point. You're absolutely right. I just think that we have to take in some logistical realities. Thank you. I appreciate it. Let me get to the ban, okay? A three-year ban, and I've briefed it. I think I pretty thoroughly briefed this issue. That is for the most egregious behavior. Here what we had is we had someone who filed several bankruptcies. Some of them – he had two of them. He had plans that were confirmed, and he was working toward. There's also evidence in the record my client had been ill. He had had cancer. He had had treatments. He had had problems, which is probably why – and the record's not that clear, sadly. I wish it were clearer. But that's why he fell out of bankruptcy those other times, including the most recent bankruptcy, which was three years in the making. Now – You're right on the spot. I see, and I will reserve four minutes. I do want to make this point, Your Honor. Thank you. In terms of the ban, anything more than 180 days doesn't even appear to be allowed under the law unless it's very egregious behavior. And there's – I understand the court has pointed out there may have been concerns with the record, but there was no finding of any bad faith other than he had repeatedly filed. There was no finding he lied. He was represented by counsel all the time. He didn't do improper motions. There's nothing like these cases that are cited in terms of when you would have a three-year ban. So I would submit a 180-day ban, which I would request be from December, which would have run by now, or at most a one-year ban from December would be appropriate. Okay. Thank you. We'll get back to you. Thank you. I'll reserve my time. Thank you. All right. Mr. Cooper. Good morning, and may it please the Court. Neil Cooper on behalf of Appellees, PHH Mortgage Corporation and U.S. Bank as trustee. As the Court already noted, I mean, the debtor paid $67,000 on this loan, million-dollar loan, over a 14-year period. So 14 years of interest, taxes, insurance, and fees, and the loan is only supposedly going up $150,000 more than it was for the original proof of claim in 2009. Senita doesn't pass the laugh test. What about the payoff request? That's been explained. So excerpts of record below, it was explained that there was a cram down, and the creditor simply failed to back it out of its system. That seems to be accurate, but it also kind of greatly affects the context of this case, correct? I mean, the debtor is believing that he has to pay a $1.2 million obligation. He's going to get a reverse mortgage for $1.4. It looks feasible. He obtains proof of the reverse mortgage, and then delay of the land changes dramatically. Isn't that – I mean, why isn't that taken into more consideration in allowing this process to play out? Well, I think it perhaps was. So the original proof of claim was filed in June 2022, $2.6 million, and he files his plan the following month, July 2022. So by the time he's filing his plan saying, oh, $1.4, he already knows, no, we're saying $2.6. And then there's a further proof of claim in August. They took out about $18,000 worth of fees. But then the secure creditor very clearly says, hey, what we said before was inaccurate. Here is the accounting of the loan, including where it had the crammed down reversal. And so the accounting of the loan is $2.6. And borrower had the opportunity to say, hey, wait, I think you didn't take XYZ into consideration. And I think, frankly, we've explained all of that. You know, the original $30,000 from the 2009 bankruptcy was used to advance the due date and left about $5,046 in suspense. And when you compare the proof of claim from the original 2009 bankruptcy to the later proofs of claim, including the one below, they had advanced the date and had put $5,046 in suspense. He paid $37,000 in his 2019 bankruptcy. Okay, well, we see that in suspense. So in the proof of claim, it says, less funds on hand, $42,000. Every cent that he's claimed to have paid has been accounted for. Okay, if he's going to say he has something else, I think that's on him to say, here's where you guys, you know, I paid $100,000 here. But he has no proof of anything. He hasn't said, I paid $100,000 here. So for him to kind of continue airing his head in the sand and saying, wait, 1.4, 1.4, I don't think he gets the benefit of the doubt or credibility in saying that and saying that the case should wait for dismissal in order to resolve something when he's not coming up with anything significant that might affect the feasibility of the plan. So I think he, you know, yes, there was an error in the 2019 proof of claim, an error in the payoff quote. The error was explained, addressed. So from that point on, I don't think he gets really the benefit of the doubt in saying, wait, hold off on dismissal. So, counsel, why don't you, why don't you try to address the reason why you think the three-year ban, the three-year bar was an appropriate remedy? The counsel for the debtor doesn't believe is appropriate in this instance. Well, I don't think there's really a dispute that a refiling bar, you know, some sort of refiling bar is appropriate just given the history of bankruptcy after bankruptcy. No payments, no payments, no confirmation. It's a serial, you know, he's a serial filer, and he keeps filing cases where there's no feasibility. There's no feasibility going forward. So I think, I don't think there's an issue with some sort of refiling bar. Why three years as opposed to one year? Because there are things outside of bankruptcy he can do that would frustrate the secured creditor's foreclosure remedy. So he goes off and files an action in state or federal court, you know, moves for a TRO, gets it, gets a preliminary injunction. And, you know, here we are, one year later, he files bankruptcy again. In the grand scheme of things, he could do that, and that would make a one-year filing bar insufficient. But you're not arguing then that really the three-year should be read out and the with prejudice, meaning a bar from any future bankruptcy or affecting these debts, should be applied? No, I read the with prejudice language as being clarified by the explicit three-year ban. Thank you. And so I think that it's an appropriate ban in order to allow a secured creditor to foreclose. And if the court looks at the bankruptcy petition itself, you know, he's gotten millions and millions, or at least claims to have millions and millions and millions of dollars in assets. His petition claims only $1.2 million in liabilities based on our loan. We think it's, you know, more than that. Aside from the loan at issue, he's got less than $100,000 worth of debt, according to him. So, I mean, I really don't think that there is a material issue, whether it's, you know, with prejudice is read as, you know, some sort of non-dischargeability. Because I don't think collection from him is going to be an issue based on what he's saying. The only issue is whether a secured creditor gets to foreclose. I mean, it's been 14 years and they've received less than eight payments. And so I think that the three-year bar is an appropriate amount of time to allow us to get through this appeal, confirm that everything's correct, and then go to foreclosure. So I would urge the court to affirm the bankruptcy court. And then unless there are any further questions, I'll yield the remainder of my time. So just to be clear, I want to make sure to put the context to your argument. You believe the multiple bankruptcies and the effect that they have in the delay on your collections as evidenced by the known payments is really the bad faith here under Levitt with prejudice being the three-year bar? Yes, the combination of the number of bankruptcies, them being dismissed, him not filing plans at all, him not confirming plans at all, and just repeatedly filing after really doing nothing in some of these, that all demonstrates the bad faith that warrants the three-year filing bar. But he did do something in several of them, though. He confirmed plans and made payments in two of them, but I mean, you know, over a 13-year period, six bankruptcies, I don't think that what little he did shows or goes against the bad faith. He did what he needed to do to keep them going longer. But I wouldn't say that it is indicia that he was pursuing a fresh start in good faith. I just think that, you know, oh, I have to do X, Y, Z or it's going to be dismissed, sort of did the bare minimum and the bad faith and refiling and doing the bare minimum or not even doing the bare minimum and getting dismissed. Is there anything in the record that shows that the debtor made payments to your client outside of the bankruptcy? I don't believe so. The proof of claim has a payment history documenting everything that's happened essentially with the loan. I did recall seeing $100 going into suspense before 2012 or 2014 or sometime. Nothing significant enough that it would have made a full monthly payment or anything like that. Did he produce any records, any bank records, payment records, checks that demonstrated that there were payments that were made that you didn't account for? Not that I'm aware of. Thank you. Any other questions? Thank you very much. Ms. Fanelli, I believe you're right at your four-minute mark. Thank you. I will address. I heard counsel say that in June of 2022, this initial claim was made. I didn't see that in the record. Maybe I misread it. The record I saw which cited to Exhibit 24 of the request for judicial notice was for August 1st of 2022, and that was where there was a spreadsheet and there was a series of what they called crammed-down adjustments, which I guess one just needs to believe that that was accurate, and that was one of the concerns is how accurate is this, which U.S. Bank didn't prove that it was. Also noting that had my client known earlier that this was going to be a $2.4 million claim, perhaps he could have pursued something akin to a crammed-down. It got him so behind because this didn't happen. I thought everybody agreed that – well, I'm not that aggrieved, but I thought that the basis of the reverse mortgage, which was based upon a value of 2.4, kind of foreclosed some of that argument about crammed-down. Well, I don't know that it did. I mean, what I'm saying is he got a reverse mortgage because that was part of his plan based on the 1.2. But then he didn't get the reverse mortgage or he didn't make the payment. Well, it didn't matter because there was no point at that point. I mean, there was nothing he could – I mean – He had seven months from the time he filed the plan and he had notice of the $2.4 million claim. What did he do in the record that forced the court to either require the credit or produce records that demonstrated that that was false, that he had made payments that were in excess of what the creditor assumed? I'm not aware of anything. Did he get a motion to compel granted? Did he file a motion to compel? None of that occurred, did it? No, he didn't do a motion to compel because he had been told, oh, we're producing them, we're producing them, we're producing them. But to answer your question, I don't see where the court gets the seven months. I have August 1st as the date, and like I said, that's how I understood the record, is that August 1st is when U.S. Bank came in with its $2.4 million. Prior to that in May, it had said $1.23 million. So that's what he was basing it on. And this is a payoff amount. Great, let's pay it off. But he had hearings where the court informed him that we're going forward with the confirmation, and I will continue this matter further, if you can produce any evidence in excess of $30,000 that's in dispute. And he never produced anything by the time they got to the hearing on the final hearing confirmation, did he? I don't believe he did. I think that's accurate, Your Honor. I will get to the bad faith. One of the arguments made here is U.S. Bank, it's bad faith because U.S. Bank hasn't gotten paid on its debt. That's not bad faith. Well, certainly if this was the first, maybe even the second bankruptcy. But when you're stretching this out over 13 years, and in bankruptcy for 11 of those, again, did he make any voluntary payments outside of bankruptcy? He did. In fact, Your Honor, since this was filed, he's paid over $25,000 on that. Let's go before. Before the bankruptcy. Before this one. Before the 2022. I don't believe the record supports that he had made any voluntary payments. So I would, that's the best I can do. And isn't that part of the problem is that, yes, there is a significant curveball thrown here. But there's nothing taken to show the way forward. It's just, let's litigate. And while we litigate, let's not make any payments. And the payment I was going to give for the 1.2, we're not going to do because we may get dismissed. Well, there's kind of no point in paying the 1.2 at this point because they're going to try to take his house anyway. I mean, that's kind of the problem. Well, but you have to pay. I mean, eventually you have to pay the debt. It was a little over $1 million loan to begin with. It's an almost 8 percent interest rate. It's been 13 years. He's been in bankruptcy for over 11 of those 13 years. He's had a stay in effect and hasn't made payments of more than $100,000 on a million-dollar claim in that period of time. Come on. You want us to believe that this is fair and reasonable and that he's done everything he can when he's holding potentially an interest in a $2.5 million bank account somewhere else and hasn't contributed any portion of it? I really question the argument you're making. I understand, Your Honor. I don't think there's any evidence that he has $2.5 million in a bank somewhere. That's speculation, and there really is no evidence of that. And over all of this time, no one's ever found that he has $2.5 million. Because his argument is, I don't own the records, and my family members won't give them to me, so I can't produce evidence of what I don't have. To produce a negative, Your Honor, that's yes. And thank you very much. Thank you. I appreciate the time. Thank you so much. I appreciate the arguments. The matter will be submitted.
judges: SPRAKER, GAN, and MEIER